Katsarelis Law P.L.L.C.
177 North Church Ave, Suite 600
Tucson, AZ, 85701
TEL: (520)510-0439/FAX: (520)532-2022
Katsarelislaw@gmail.com
Efthymios Katsarelis, PCC#66450 SB#029024
**Attorney for Richard A. Madril**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| United States of America, | CR18-1309-RM (LAB) |
|---|---|
| Plaintiff, | |
| vs. | |
| Richard A. Madril | **LEGAL BRIEFING RE:** **HEARING NOVEMBER 16, 2022** |
| Defendant. | |

This simultaneous briefing is prepared according to Court order following the November 16, 2022, hearing.

RESPECTFULLY SUBMITTED this 19th day of December 2022.

Katsarelis Law, P.L.L.C
/s/ *Efthymios Katsarelis*
Efthymios Katsarelis, Esq.
Attorney for Defendant

1

The Court has been briefed extensively in this case; following testimony, there are no facts supporting a violation of the conditions of supervised release here and the Government's Motion to Revoke Supervised Release and its request that the defendant be sent to prison because of his actions should be dismissed.

Facts provided in Government evidence and in testimony do not support any theory of 'deceit', even if such theory could be wedged into Special Condition 6. Previous counsel has briefed the Court on several legal, factual, and procedural problems, attempting to make the Court aware of the lack of clear allegations and the due process problems that have arisen.

A defendant on supervised release is not supposed to be in an adversarial position until the probation department has made efforts to clarify what is expected, assist the defendant in additional services if needed, and to violate the defendant only when the defendant has been notified of the failure to meet conditions and given an opportunity to explain and adjust behavior with the probation officer.

Here, former client Lucia Duarte became aware that the Madrils were disbarred and that she could get restitution from the court. Lucia Duarte somehow got connected to HSI and an investigation ensued. The results of this investigation are:

1) a Report of Investigation (2 ½ pages);

2) a 50-minute recording of Lucia Duarte, and her daughter Marisol Duarte that is the basis of the ROI, which demonstrates the ROI was failed to note the extensive discussion of restitution and requests for evidence of the alleged 'deceit';

3) an affidavit from Lucia Duarte; (the HSI recording substantively contradicts the affidavit specifically about Lucia's statement that she met Richard A. Madril at 'his' law office, suggesting defendant led her to believe he was still a practicing attorney; yet on the recording, both Lucia and Marisol confirm they knew it was his 'dad's' law office.)

4) an incomplete, distorted recording Marisol Duarte made of a 7-minute meeting with Richard Madril at his current place of employment as an office manager/ legal assistant for Richard S. Madril, his father.

The Government gave the HSI investigation and evidence to the Department of Probation in Tucson. Bill Grajeda, the defendant's probation officer, reviewed the information and conducted his own investigation. Mr. Grajeda determined there was no violation of Special Condition 6; nevertheless, he met with Richard A. Madril and emphasized Special Condition 6 and went over his duties for his father, confirming he was in no way crossing the line into acting as an attorney.

In addition to the atypical process, there has been confusion in defending this case because the allegation (violation of Special Condition 6) has not been supported by

the facts the Government offers as evidence. In substance, this is the evidence following testimony:

Richard A. Madril sent Lucia Duarte two letters informing her of his changed status with the bar and the courts, and that he would no longer be acting as the attorney in her husband's case. Despite informing her of this, Lucia Duarte contacted Richard A. Madril a few times by text over a period of months to which he did not respond.

In August 2021, Richard A. Madril answered a phone call form Lucia because he had document for her (part of the now closed file) and because he understood he was obligated to provide former clients with their files. He agreed to meet her impromptu at his father's law office (a completely different building and area of town than the office Richard A. Madril worked out of as an attorney). Marisol and Lucia Duarte arrive with a child or two in tow and the conversation is partly recorded by Marisol.

The Government has proposed the following theory of what was happening at this August meeting:

> "…[T]wo things can be true at the same time. One: that Richard Madril, Richard A. Madril, the defendant in this case, is employed by his father as a legal assistant or a paralegal or something like that and does work under his father's law license as part of his father's law practice where his father accepts the clients, his father sets the -- sets the fees, the scope of work, all of that. And it can also be true that Richard Madril had an existing client from his former law practice who he continued to provide legal services to separate and independent of his employment with his father. And there are facts to support that in this case."

(Transcript, Evidentiary Hearing, November 16, 2022, p.12, *l.* 7-18.)

Testimony at the November 16, 2022, hearing failed to illuminate these 'facts'.

If the scenario presented by Lucia Duarte raised concerns, the probation officer is the mechanism to correct the nuances of Richard A. Madril's conversation with a former client. Parsing of an incomplete conversation to extract slivers of potential 'proof' of 'deceit' should not be the basis of a revocation. Revocations are about concrete conditions and violations, not about a former client's misunderstanding of an interaction she had with the defendant. Moreover, the defendant's employer is obligated to probation and to the bar under his own license, to ensure the defendant was not acting as an attorney.

The transcript of this recording was gone over in testimony of Richard A. Madril, explaining in significant part:

Lucia brought up the fees she still owed from her past contracts, which Richard acknowledged was "a big pie" but he steered her away from this conversation and told her not to worry about it. He brushed her off because he had no intention of collecting any fees past due. He also explained he was quite familiar with Lucia Duarte and that over the years it was routine that whenever they talked, Lucia discussed money she owed, her plans to pay, and the difficulties in her life that prevented her from paying.

Richard A. Madril *was* giving Lucia Duarte the brush-off, he was not trying to convince her to pay past fees; he was not trying to convince her to contract for new work with his father, though he told her in general what his father charged as a typical

fee; most importantly, Richard Madril was not trying to convince Lucia Duarte that he was still an attorney, he is rushing her because he *did not want to engage* Lucia Duarte, he answers her questions and sends her on her way as quickly as he can.

Richard A. Madril also described how he met with her in the outer, lobby area of his office, not in the inner office his father uses to meet with clients. He believed she knew he was no longer an attorney- moreover, he had a right to rely on that belief.

Central to the substantive portion of the recording, Lucia Duarte asks what's happening in her husband's case now, and Richard redirects her, telling her the immigration court would have sent *her* the status, and the court *would not have sent it to him*, referring to the fact that he is no longer an attorney. When Lucia indicates she is unaware of whether the court sent her anything, Richard provides her with a printout directly from the court website, a document that was later acknowledged by the court to have been posted in error, an error also acknowledged by the Government and HIS and the Duartes and in the new immigration court filings for Lucia Duarte's husband.

There is no indication that this printout was altered in any way or presented with any subterfuge. By the time Lucia and Marisol Duarte meet with HSI, both the women and the HSI agent conducting the interview *know already* that the document was a court error, and not deceit by Richard A. Madril.

At HSI, the main complaint Lucia and Marisol have about the meeting is their 'opinion' that Richard A. Madril was avoiding them and rushing them and that he

6

seemed nervous. Lucia and Marisol Duarte make no substantive complaint about exactly what Richard A. Madril did or said. Nevertheless, the HSI agent repeatedly refers to the 'restitution' that Lucia can get from this 'dirty immigration attorney'. The agent makes repeated requests for documentation and evidence he wants to support the Government's theory that Richard is acting as an attorney. Significantly, the ROI makes no mention that fully 50% of the interview involved trying to get evidence against Richard A. Madril from the Marisol and Lucia *so that they could get financial restitution from the Court.* None of this evidence is disclosed, if it was ever produced.

Richard S. Madril, the defendant's father and employer, testified that as an experienced, licensed attorney he supervised Richard A. Madril as he did any other paralegal, office manager or assistant he has employed over his long career.  He described that the two communicate daily and that he is aware of what his employee says and does with clients in general.  He stated unequivocally that his son did not run his own law practice or pretend to be a lawyer using his office as a ruse to conduct such a scheme. He stated he knew of the meeting with Lucia Duarte and had no concerns about it.  He stated he was not always present to be with his assistants when clients came by the office, a prospect which would nearly negate the purpose of having an assistant, i.e., so someone can be in the office when the attorney must be in court or is otherwise engaged.

Richard S. Madril further stated he knew his son was a felon. He also stated he was aware of his ethical responsibilities to the bar as far as supervising employees. He further stated he was aware his son was on supervised release and that his work was limited to that of a supervised employee at a law firm, i.e., Special Condition 6.

The Government suggested on cross-examination that because no contract was produced to show that Lucia Duarte was Richard S. Madril's client, this proved Richard A. Madril was trying to deceive her. However, legal assistants routinely meet with prospective clients and discuss general fees and procedures for court, and the prospective client do not enter a contract in the end. The Government also alleges that Richard S. Madril failed to supervise his assistant because he was always not present when his assistant spoke with clients or prospective clients.

Significantly, the ABA rules governing the practice of law state that much of what attorneys do can be done by a legal assistant if supervised by a licensed attorney. Thus, if the defendant was supervised by a licensed attorney, any nitpicking of what was said and what was meant and what was understood during the approximately 7 minutes of recorded conversation is negated.

There is no evidence to suggest that Richard S. Madril has failed to supervise his son on this or any other occasion.

Finally, Bill Grajeda testified:

Mr. Grajeda was the defendant's probation officer during the relevant time; that he went over the conditions of supervised release with Richard with a day or two of his release from custody; that he approved of Richard A. Madril working as an assistant in his father's office; that he provided Richard S. Madril with written notice of his son's status as a felon and "third party risks"; that he looked at the evidence AUSA Sullivan provided and found no evidence of violation.

Nevertheless, not wanting to identify the HSI investigation or Lucia Duarte, Bill Grajeda questioned Richard A. Madril pointedly about his duties and the limits of what he could do in his role as assistant.  Mr. Grajeda further described that Richard A. Madril was cooperative and had complied with his conditions in every way, justifying a move to a lower level of supervision.

Special Condition 6 states:

"You are prohibited from being <u>self-employed in the legal field</u> but may work as such an employee with <u>prior approval</u> of the probation officer if your employer is <u>aware of third-party risks</u>."

Judgment, CR18-1309-002-RM, Dkt. 190, pg. 4

Judge Bowman was correct in limiting testimony to those persons with information relevant to Special Condition 6. Lucia and Marisol Duarte or agents involved in this investigation do not have any knowledge as to Special Condition 6; i.e., whether Richard A. Madril was *in fact* '<u>self-employed</u>' or whether he was employed by his father, a licensed attorney; (only his employer and probation officer Bill Grajeda

9

could testify to this); whether Richard A. Madril had the <u>prior approval</u> of probation (only the Department of Probation would know this); and whether his employer had notice of <u>third-party risks</u> (again, only probation and the defendant's employer would know this).

Even though his testimony was not needed to necessarily prove up that he had complied with Special Condition 6, Richard A. Madril testified at length, going over all aspects of what transpired with Lucia Duarte.

On its face, the recording of the meeting with Lucia Duarte shows there was no intent to deceive at all – if there was, what was Richard A. Madril trying to gain? He did not try to get past fees or new fees; he did not attempt to secure Lucia as his father's client (nor as his client, a theory the Government knows, if true, would not be a violation of Special Condition 6 but a crime of fraud or potentially unauthorized practice of law – but *not* a violation of Special Condition 6.)

There *is* evidence that Lucia Duarte and her daughter Marisol learned from family members and social media about the prosecution of the Madrils, and that perhaps they could get restitution. Thus, there is a second significant motive (in addition to her husband's immigration status being reopened) for Lucia Duarte to raise 'suspicions' about Richard A. Madril.

The Court now has before it briefing on legal and factual issues, as well as testimony roundly confirming that Richard A. Madril is <u>not self-employed in the legal</u>

<u>field</u> but is employed as a legal assistant/office manager by his father, a licensed attorney; that probation gave him <u>prior and ongoing approval</u>; and that his employer had notice of <u>third party risks</u>.

Re-sentencing or adding punishment for the underlying offense it is ***not*** a legitimate use of violation of supervised release. The Court should not allow the Government to use 'violation' of supervised release to revisit Judge Marquez' sentencing decision.

Pretending to be an attorney is not prohibited by Special Condition 6 – it doesn't need to be, as that action would be a crime. If there was evidence of a crime here, one presumes the Government would use its considerable power and authority to prosecute that crime.

What's left of the allegation is that Richard A. Madril overstepped his role as 'legal assistant', and that his employer, and his probation officer, failed to supervise him.

There is not a new crime here; there is not deceit; there is no specific support for the Government's theory that Richard A. Madril attempted to deceive a former client, even if that somehow violated Special Condition 6.

There is not a violation of Special Condition 6.

The Motion to Revoke should be dismissed.

RESPECTFULLY SUBMITTED this 19th day of December 2022

                                             Katsarelis Law, P.L.L.C
                                             /s/ *Efthymios Katsarelis*
                                             Efthymios Katsarelis, Esq.
                                             Attorney for Defendant

DISTRIBUTION: All ECF Participants