**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-18-01309-002-TUC-RM (LAB) |
| Plaintiff, | **ORDER** |
| v. | |
| Richard A. Madril, | |
| Defendant. | |

On December 22, 2022, Magistrate Judge Leslie A. Bowman issued a Report and Recommendation (Doc. 291) recommending that this Court deny the Government's Motion to Revoke Supervised Release (Doc. 244). The Government filed an Objection to the Report and Recommendation. (Doc. 292.) The Objection will be overruled and the R&R affirmed.

    **I.**    **Background**

On December 6, 2019, a jury found Defendant Richard Madril guilty of Conspiracy to Commit Offense or to Defraud the United States, in violation of Title 18 U.S.C. § 371. He was sentenced on December 2, 2020 to three months of incarceration with five years of supervised release to follow. The Court imposed several conditions of supervised release, including special condition 6, which states that Defendant is "prohibited from being self-employed in the legal field but may work as such an employee with the prior approval of the probation officer if [his] employer is aware of potential third party risks." (*See* Doc.

244 at 3; Doc. 190 at 4.)

On August 5, 2022, the United States filed a Motion to Revoke Conditions of Supervised Release, arguing that Defendant Richard Madril violated Special Condition 6 of the terms of his supervised release. (Doc. 244.) The Government states that on September 29, 2021, it received information from an attorney for U.S. Customs and Immigration Enforcement regarding a meeting between Defendant and Ms. Lucia Duarte[1] that took place at Richard S. Madril's law office in August of 2021. (*Id.*) The meeting was regarding the immigration case of Mr. Ernesto Jacquez Aguirre,[2] Ms. Duarte's husband and Defendant's former client. (*Id.*; *see* Doc. 291.) On November 30, 2021, the Government submitted an investigative report to the United States Probation Office ("USPO") which documented an interview with Ms. Duarte at which she stated that Defendant had provided legal services to her and Mr. Aguirre during the August 2021 meeting. (*Id.*) Also included were transcripts of recordings Ms. Duarte made during the meeting with Defendant, which are also attached to the Government's Motion. (*Id.*) The Government argues that these transcripts provide evidence that Defendant provided legal services to Mr. Aguirre regarding his immigration case and that he was acting outside the scope of his employment at his father's law office when he met with Ms. Duarte. (*Id.*) The Government argues that if Defendant was engaged in the unauthorized practice of law and was not properly supervised by his father, he was in violation of special condition 6. (*Id.*; *see also* Doc. 291 at 7-8.)

The Court held an evidentiary hearing on the Motion, at which Defendant's Probation Officer, Bill Grajeda; Defendant's father, Richard S. Madril; and Defendant testified to relevant facts regarding the August 2021 meeting and Defendant's employment at his father's law office. (Doc. 291 at 3-7.) The witnesses testified, and the Government does not dispute, that Richard S. Madril hired Defendant to work at his law office and perform duties of a legal assistant/paralegal. (*Id.*) Both Mr. Madril and Defendant

---

[1] Ms. Duarte's daughter was also present.
[2] Mr. Aguirre was ordered removed from the United States in June 2021. (Doc. 244 at 3; Doc. 244-4 at 3.)

understood special condition 6 and that Defendant would not present himself as an attorney to people coming to the law office; Grajeda did not believe the employment violated special condition 6.[3] (*Id.*) Mr. Madril testified that Defendant is permitted to meet with prospective clients at pre-conferences and may provide general documents and information but cannot give legal advice. (*Id.*)

Defendant testified that he understood that special condition 6 prohibited him from being self-employed in the legal field, that he would be working for his father and not practicing as an attorney, and that he had no clients. (*Id.*) Defendant's exhibits included a letter sent to all former clients, including Mr. Aguirre, informing them that he was no longer practicing law, was suspended from practicing in immigration court, and had been suspended by the Arizona State Bar. (*Id.*) Defendant testified that Ms. Duarte sent him a text message and that he agreed to meet with her to give her a document—a Board of Immigration Appeals ("BIA") decision—that was related to work he had done on Mr. Aguirre's case prior to his conviction. (*Id.*) He testified that the State Bar had advised him to provide documents to former clients. (*Id.*) He testified that he believed Ms. Duarte was aware that he was not her attorney, that he told her his father could help her, and that the meeting took place in the office lobby and not in the conference room. (*Id.*)

Defendant's testimony, as well as the transcript of the recording of the August 2021 meeting, indicate that Defendant and Ms. Duarte discussed: (1) the history of Mr. Aguirre's case; (2) the protocol for obtaining an I-131 travel document; (3) the possibility of Mr. Aguirre obtaining a passport at the Mexican consulate and the consulate's location; (4) Ms. Duarte's income and the earned income tax credit; (4) that Mr. Madril could help Mr. Aguirre get a work permit for a fee of five hundred dollars; (5) that Mr. Aguirre would need photos and an application in order to get a work permit; (6) the money Ms. Duarte owes Defendant for his prior legal services in her husband's case. (*See* Docs. 244-5, 244-

---

[3] Grajeda testified that he knew Defendant met with Ms. Duarte, reviewed the recordings of the meeting and the report from Homeland Security Investigations, spoke with Defendant about the situation, and decided, together with his supervisor, that the probation office would not file a petition to revoke Defendant's supervised release. (Doc. 291 at 3, 12.)

- 3 -

6, 291 at 5-7.) Defendant gave Ms. Duarte the BIA decision in Mr. Aguirre's case. (Doc. 291 at 7.) He testified that he believed Ms. Duarte had received his letter notifying his former clients that he no longer represented them. (*Id*.)

The R&R reviews the parties' arguments and the evidence presented and finds that, in light of the fact that Defendant was unquestionably employed by his father's law office with the permission of his probation officer, the sole question before the Court is whether Defendant was "self-employed in the legal field by virtue of his interaction" with Ms. Duarte at the August 2021 meeting. (*Id*. at 9.) The R&R notes Defendant's position that (1) he was obligated to give her the BIA decision and (2) the information he provided Ms. Duarte was general information, not specific to Mr. Aguirre's case, available to the public without an attorney. (*Id*. at 9-10.) The R&R notes that "self-employment" means "some expectation of wages for service" and that there is no evidence Defendant attempted to obtain any money from Ms. Duarte, either in exchange for the August 2021 meeting or for the representation previously provided. (*Id*. at 10.) The R&R further notes that Mr. Madril was aware of Defendant's meeting with Ms. Duarte, that Defendant met with Ms. Duarte in the public lobby and not in a private office, that Defendant believed Ms. Duarte had received his letter notifying his clients that he was no longer practicing law, and that Ms. Duarte did not question Defendant's statements that his father could represent her and/or Mr. Aguirre. (*Id*. at 11.)

The R&R goes on to find that whether Defendant engaged in the unauthorized practice of law does not resolve the issue of whether he was self-employed in the legal field in violation of special condition 6. (*Id*. at 11-12.) The R&R finds that all the evidence shows that Defendant was employed by Mr. Madril's law firm as a paralegal and worked under his father's supervision, and that there is no evidence he was self-employed in the legal field. (*Id*. at 12.) The R&R found the testimony of all witnesses, including Defendant and Mr. Madril, to be credible. (*Id*. at 11.) The R&R concludes that the Government did not prove by a preponderance of the evidence that Defendant knowingly violated special condition 6. (*Id*. at 12.)

1    The United States raises two objections to the R&R. (Doc. 292.) First, the
2 Government objects that the R&R incorrectly concluded that Defendant was not self-
3 employed in the legal field, in violation of special condition 6, during the August 2021
4 meeting with Ms. Duarte. (*Id.*) The Government contends that Defendant did "engage in
5 legal field activity" during the meeting by providing Ms. Duarte with information and
6 opinions specific to Mr. Aguirre's immigration status and case, including the likely
7 consequences of him being in the United States without valid legal status or paperwork.
8 (*Id.* at 4.) The Government further argues that there is no indication the August 2021
9 meeting was within the scope of Defendant's employment with his father, because it was
10 related only to Defendant's prior representation of Mr. Aguirre and was not connected to
11 Ms. Duarte being or becoming a client of Mr. Madril's law firm. (*Id.* at 5-6.) The
12 Government further objects to the R&R's finding that Defendant's and Mr. Madril's
13 testimony was credible and asks the district court to hold an evidentiary hearing and to
14 consider the credibility of their testimony de novo. (*Id.* at 7.) In the alternative, the
15 Government asks the Court to consider modifying Defendant's condition of release to be
16 more specific, to provide Defendant, his employer, probation, and the Government more
17 clarity on what is permitted and prohibited by special condition 6.

## II.    Applicable Law

A district judge must "make a de novo determination of those portions" of a magistrate judge's "report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation"). Failure to object to the findings and recommendations of the magistrate judge "waives a party's right to review." Fed. R. Crim. P. 59(b)(2).

A court may revoke a defendant's supervised release if it finds by a preponderance of the evidence that the defendant violated a condition of supervision. 18 U.S.C. § 3583(e)(3); *United States v. Musa*, 220 F.3d 1096, 1098 (9th Cir. 2000). A "preponderance of the evidence" is "evidence that is more probably true than not." Ninth Circuit Model

Civil Jury Instruction 1.6. "[A] district court must conduct its own evidentiary hearing before rejecting a magistrate judge's credibility findings[.]" *United States v. Ridgway*, 300 F.3d 1153, 1154 (9th Cir. 2002).

Section 3583(e)(3) provides that the court "*may*, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7):"

> [R]evoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, more than 3 years in prison if such offense is a class B felony, more than 2 years in prison if such offense is a class C or D felony, or more than one year in any other case.

18 U.S.C. § 3583(e)(3) (emphasis added).

The relevant factors listed in § 3583 include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the need for the sentence imposed to "afford adequate deterrence to criminal conduct," to "protect the public from further crimes of the defendant," and to "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; (3) the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to Title 28 Section 994(a)(3); (4) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; and (5) "the need to provide restitution to any victims of the offense." *See* 18 U.S.C. § 3553.

. . . .

. . . .

### III. Analysis

The Court agrees with the Magistrate Judge that the Government has not shown by a preponderance of the evidence that Defendant was self-employed in the legal field during his August 2021 interaction with Ms. Duarte, in violation of special condition 6. All the evidence presented to the Court indicates that Defendant was, and has been, employed at his father's law office as a paralegal/legal assistant, not as an attorney. Nor is there any evidence that Defendant was self-employed in the legal field, outside the scope of his employment with his father's law firm. There is no dispute that Defendant did not receive any payment or other compensation in exchange for the August 2021 meeting with Ms. Duarte. And, although Defendant and Ms. Duarte discussed money owed for prior legal services, that discussion was initiated by Ms. Duarte and Defendant made no attempt to collect that money, or any other fees. Defendant never conveyed to Ms. Duarte that he was her attorney or could represent her in any capacity. To the contrary, Defendant indicated that his father, Mr. Madril, could assist Ms. Duarte and Mr. Aguirre with their immigration needs. Moreover, the status quo at that time was that Defendant had informed his prior clients, including Ms. Duarte and Mr. Aguirre, via letter, that he had been suspended from practicing law. The Court has reviewed the transcript of the recording of the August 2021 meeting, and the Government's arguments notwithstanding, does not find that it shows by a preponderance of the evidence that Defendant violated special condition 6.

The Court has considered the factors listed in Section 3583 and finds that a modification to the conditions of Defendant's supervised release is warranted. Due to the nature and circumstances of Defendant's offense, his history and characteristics, and the need to protect the public from any further crimes of Defendant, the Court will prohibit Defendant from discussing legal matters with his former clients, unless and except as authorized by the State Bar of Arizona—for example, providing them with legal documents. Although Defendant did not violate special condition 6, the Court is troubled by the fact that Defendant met with a former client and discussed legal matters, including situations and circumstances specific to Mr. Aguirre. Whether intentionally or

unintentionally, Defendant at least came close to engaging in the unauthorized practice of law during the meeting, and this conduct should be deterred in light of Defendant's history and the purpose of his supervised release.

Accordingly,

**IT IS ORDERED** that the Report and Recommendation (Doc. 291) is **accepted and adopted in full**.

**IT IS FURTHER ORDERED** that the United States' Objection (Doc. 292) is **overruled**.

**IT IS FURTHER ORDERED** that the United States' Motion to Revoke Conditions of Supervised Release (Doc. 244) is **denied**.

**IT IS FURTHER ORDERED** that Defendant's conditions of supervised release, set forth in the September 1, 2022 Amended Judgment (Doc. 246), are modified to add the following condition: Defendant shall not discuss legal matters with his former clients, unless and except as authorized by the State Bar of Arizona. The Judgment will be amended to reflect this new condition of supervised release.

Dated this 10th day of April, 2023.

_____
Honorable Rosemary Márquez
United States District Judge